### UNITED STATES DISTRICT COURT
### DISTRICT OF MAINE

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSSOCIATED WITH 207-245-8451 THAT IS STORED AT PREMISES CONTROLLED VERIZON | No. 2:25-mj-00009-KFW<br><br>**FILED UNDER SEAL** |

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

I, Jason Leadbetter, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information associated with a certain cellular telephone assigned call number (207) 245-8451 (the "8451 phone") that is stored at premises controlled by Verizon Wireless ("Verizon"), a wireless telephone service provider headquartered at 180 Washington Valley Road, Bedminster, New Jersey. The 8451 phone is described herein and in Attachment A, and the information to be seized is described herein and in Attachment B. By the authority sought herein, I seek authority to collect certain stored information about the 8451 phone and certain ongoing, or prospective, location information, all as described below and in Attachment B.

2.      I am a Task Force Officer (TFO) with the Federal Bureau of Investigation (FBI) and have been in this position since January 2024. I am also a Portland Police Department Detective and have been a police officer since August 2010. In my career, I have utilized various investigative tools and techniques, to include the use of search warrants. I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(c).  I am authorized to investigate violations of laws of

the United States and to execute warrants issued under the authority of the United

States. During my time in law enforcement, I have participated in numerous

investigations relating to the distribution of controlled substances, including cocaine,

cocaine base, heroin, fentanyl, methamphetamine, diverted pharmaceuticals, and other

substances in violation of the federal anti-drug laws, including Title 21, United States

Code, Sections 841 and 846. I have conducted or participated in, among other things,

surveillance, the execution of search and arrest warrants, debriefings of informants and

confidential sources, and reviews of recorded conversations relating to narcotics

trafficking. I have authored drug-related search warrant requests and successfully

executed such warrants resulting in the seizure of drugs and other contraband. I am

familiar with the habits, methods, routines, practices, and procedures commonly

employed by persons engaged in the trafficking of illegal drugs, including the use of the

internet, internet platforms, applications, and cellular telephones to facilitate those

activities.

     3.     The facts in this affidavit come from my personal observations, my

training and experience, and information obtained from other agents and witnesses.

This affidavit is intended to provide the facts necessary for a determination of probable

cause for the requested warrant.

     4.     Based on my training and experience and the facts as set forth in this

affidavit, there is probable cause to believe that Francis Mezan has committed violations

of federal law, to include 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 846 (hereinafter "Target

Crimes"). There is also probable cause to believe that the information described in

Attachment B will constitute evidence of these criminal violations. Additionally, there is

probable cause to believe that Francis Mezan is a fugitive due to an outstanding arrest

warrant from this Court and there is probable cause to believe that the information described in Attachment B will assist with locating Mezan on that warrant.

5.      The Court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711.  Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated. *See* 18 U.S.C. § 2711(3)(A)(i).

**PROBABLE CAUSE**

6.      On September 24, 2024, in 2:24-mj-00294-KFW, this Court authorized a search warrant for certain premises in Portland, Maine, related to the FBI's ongoing drug investigation relating to Francis Mezan, aka "Frenchie." In support of the affidavit submitted for that residential search warrant, the FBI submitted as Exhibit 1 a prior cell phone location warrant in 2:24-mj-00246-KFW, which sought and obtained authority to collect certain information, including prospective cell location data, from Verizon as to cellular number 207-219-6358 (hereinafter the "6358 phone"). That cellular location data warrant was authorized on July 29, 2024, and approved collection of such data for a 30-day period. Attached hereto as Exhibit A is the residential search warrant affidavit which, in turn, has attached to it as Exhibit 1 the prior cell location data affidavit. Both affidavits are expressly incorporated herein for their factual statements, which will not be otherwise repeated herein.

7.      On January 2, 2025, in 2:25-cr-0004-NT, a grand jury returned a three-count indictment, charging Francis Mezan with three separate instances of distribution of a federally controlled substance, each in violation of 21 U.S.C. § 841(a)(1). An arrest warrant issued for his arrest, a copy of which is attached hereto as Exhibit B.

8.      In the weeks leading up to this indictment, the FBI obtained additional information regarding Mezan's ongoing drug activity and use of cellular telephones in relation to that activity. Specifically, the FBI learned that U.S. Drug Enforcement Administration ("DEA") agents in the Portland area were working with a confidential human source ("CHS") who reportedly had an ongoing drug-related relationship with Mezan. The CHS is reportedly providing information to law enforcement for potential judicial consideration on a pending state charge of unlawful possession of schedule drugs. In approximately mid-December of 2024, the CHS provided information to the DEA that they had been transporting Mezan out of state, in order for Mezan to resupply with drugs. In return, CHS would reportedly get cocaine for providing transportation. They also provided what they reported at the time was an active phone number for Mezan. A subsequent common-call analysis indicated that the numbers most frequently in contact with the 6358 phone—which was previously used in this FBI investigation by Mezan (see Exhibit 1 to Exhibit A)—were also frequently in contact with this new reported number for Mezan.[1] Based on my experience and training, this similarity in contacts provides corroboration for those numbers being utilized by the same individual. It also corroborated the CHS's report of having an ongoing relationship with Mezan involving drug transportation.

9.      On December 17, 2024, however, Verizon provided information that this new number for Mezan was discontinued as of December 17, 2024. After receipt of this information, the DEA CHS was asked if he could provide a new active phone number

---

[1] Information received from Verizon establishes that usage of the 6358 phone ceased on approximately September 15, 2024.

for Mezan. On approximately January 1, 2025, the CHS provided the 8451 number as a new number for Mezan.

10.    Legal process was sent to Verizon for the 8451 number. Verizon returned with information that the phone number was activated on December 18, 2024. The timing of the prior number being de-activated, and this number being activated the following day, further suggests, based on my training and experience, that the CHS's reporting about this number being utilized by the same individual is accurate. A subsequent common-call analysis further indicated that the numbers most frequently in contact with the 6358 phone were also frequently in contact with this new reported 8451 number for Mezan. For example, among both phones' most frequent contacts was a number known to be used by Mezan's suspected girlfriend. The 6358 phone and the 8451 number, as of January 3, 2025, had 11 common contacts. Based on my experience and training, this similarity in contacts—especially given the short amount of time the 8451 number has been active—again provides corroboration for those numbers being utilized by the same individual, as reported by the CHS. It also corroborates the CHS's report of having an ongoing relationship with Mezan into January of 2025.

11.    Based on my training and experience and the particular facts of this investigation, it is very uncommon for a drug trafficker who has been distributing drugs for as long as Mezan to voluntarily cease distributing drugs. Long-term drug traffickers frequently become reliant on the income from their drug activity. I have not received information about Mezan having any other lawful employment.

**ADDITIONAL INFORMATION ABOUT WIRELESS CARRIERS**

12.     In my training and experience, I have learned that Verizon is a company that provides cellular telephone access to the general public.  Providers, including Verizon, maintain certain records, as discussed in the following paragraphs.

*Subscriber Information and Stored Communications*

13.     I know that wireless providers such as Verizon collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service.

14.     Wireless phone providers often provide their subscribers with voicemail services. In general, a provider will store voicemail messages on behalf of a particular subscriber until the subscriber deletes the voicemail. If the subscriber does not delete the message, the message may remain in the system of Verizon for weeks or months. Among the services commonly offered by wireless phone providers is the capacity to send short text or multimedia messages (photos, audio, or video) from one subscriber's phone or wireless device to another phone or wireless device via one or more wireless providers. This service is often referred to as "Short Message Service" ("SMS") or "Multimedia Messaging Service" ("MMS"), and is often referred to generically as "text messaging." Based on my knowledge and experience, I believe that stored electronic communications, including SMS and MMS messages that have been sent or received by subscribers, may be stored by Verizon for periods incident to and following their transmission.

15.     Wireless phone providers typically also retain certain transactional information about the use of each telephone, voicemail, and text-messaging account on their systems. This information can include messaging logs showing all activity on the account, such as local and long-distance telephone connection records, records of session times and durations, lists of all incoming and outgoing telephone numbers or e-mail addresses associated with particular telephone calls, voicemail messages, and text or multimedia messages. Providers may also have information about the dates, times, and methods of connecting associated with every communication in which a particular cellular device was involved.

16.     A provider may also retain information about which cellular handset or device was associated with the account when the messages were sent or received.  The provider could have this information because each cellular device has one or more unique identifiers embedded inside it. Depending upon the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Station Equipment Identity ("IMEI"). When a cellular device connects to a cellular antenna or tower, it reveals its embedded unique identifiers to the cellular antenna or tower in order to obtain service, and the cellular antenna or tower records those identifiers as a matter of course.

17.     In my training and experience, this stored information constitutes evidence of the crimes under investigation because the information can be used to identify a phone's user or users, and may assist in the identification of co-conspirators

and/or customers and victims. It can also provide direct evidence of crimes under investigation. For example, drug traffickers frequently arrange drug transactions using cellular phones and communications that are preserved in Verizon's regular course of business can be recovered from Verizon.

*Location Information –Prospective*

18.    I also know that providers, including Verizon, of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including "cell-site data" and including on a near real-time basis. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected.  These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is often not a precise location. However, I also know that Verizon collects "per-call measurement data" or PCMD, which Verizon also refers to as the "real time tool" (RTT). RTT data estimates the approximate distance of the cellular device from a cellular tower based on the speed with which signals travel between the device and the tower. This information can be used to estimate an approximate location range that is more precise than typical cell-site data.

19.    I know that Verizon can collect cell-site and RTT data about the 8451 phone on an ongoing or near real time basis. Based on my training and experience, I know that for each communication a cellular device makes, this wireless service

provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication, (6) RTT information. I know that wireless providers such as Verizon typically collect and retain this data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes. This information can provide important evidence of crimes under investigation by establishing the location of a phone user, which allows a number of additional investigative techniques and can also be used to show patterns of movement or to corroborate facts developed from other sources.

## AUTHORIZATION REQUEST

20.      Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(a)-(c). This warrant would require Verizon to disclose to the government copies of records and other information (including content of communications) particularly described in Attachment B. Upon receipt of that information government-authorized persons would review the information to locate certain items, as further described in Attachment B.

21.      I further request that the Court direct Verizon to disclose to the government any information described in Attachment B that is within the possession, custody, or control of Verizon.  I also request that the Court direct Verizon to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with Verizon services, including by initiating a

signal to determine the location of 8451 phone on Verizon's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate Verizon for reasonable expenses incurred in furnishing such facilities or assistance.

22.    I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the 8451 phone outside of daytime hours.

Respectfully submitted,

Jason Leadbetter
Task Force Officer
Federal Bureau of Investigation

Sworn to telephonically and signed electronically in accordance with the requirements of Rule 4.1 of the Federal Rules of Criminal Procedures

Date:  Jan 06 2025

City and state:  Portland, Maine

_Judge's signature_

Karen Frink Wolf,  U.S. Magistrate Judge
_Printed name and title_